UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THOMAS L. P.,[1]             Case No. 1:21-cv-736
    Plaintiff,                  Black, J.
                               Litkovitz, M.J.
    vs.

COMMISSIONER OF             **REPORT AND**
SOCIAL SECURITY,             **RECOMMENDATION**
    Defendant.

       Plaintiff Thomas L. P. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI).[2] This matter is before the Court on plaintiff's Statement of Errors (Doc. 8), the Commissioner's response (Doc. 9), and plaintiff's reply (Doc. 10).

**I. Procedural Background**

       Plaintiff filed an application for SSI in January 2019, alleging disability due to anxiety, depression, and paranoid schizophrenia. (Tr. 239). The application was denied initially and on reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Patrick J. MacLean. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing by telephone on December 7, 2020. (Tr. 59-100). On

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.
[2] At the administrative hearing, plaintiff's counsel explained that he believed a disability insurance benefits (DIB) claim had been mistakenly processed at the local level. (Tr. 40, 62-63). Because plaintiff never intended to file a DIB claim, he withdrew his related request for hearing. (*Id.*). As such, the ALJ's decision and this Report and Recommendation only concern plaintiff's SSI claim. (*Id.*).

February 19, 2021, the ALJ issued a decision denying plaintiff's SSI application. (Tr. 36-53). The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-10).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

>5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

>**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

>1. [Plaintiff] meets the insured status requirements of the Social Security Act through September 30, 1992.
>
>2. [Plaintiff] has not engaged in substantial gainful activity since January 14, 2019, the date the application was filed (20 CFR [] 416.971 *et seq.*).
>
>3. [Plaintiff] has the following severe impairments: depression, anxiety, and paranoid schizophrenia (20 CFR [] 416.920(c)).
>
>4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR [] 416.920(d), 416.925 and 416.926).
>
>5. After careful consideration of the entire record, [the ALJ] finds that [plaintiff] has the residual functional capacity to perform a full range of work at all

exertional levels but with the following non-exertional limitations: He should never climb ladders, ropes, or scaffolds. He needs to avoid all use of hazardous moving machinery and all exposure to unprotected heights. Based on his mental symptoms, he is limited to simple, routine, repetitive tasks learned on the job within 30 days or less, performed in a work environment free of fast-paced production requirements, with simple work-related decisions and few if any workplace changes. He is further limited to jobs involving brief and superficial interaction with the public[], and occasional interaction with coworkers and supervisors.

6. [Plaintiff] has no past relevant work (20 CFR [] 416.965).

7. . . . [Plaintiff] was 55 years old, defined as an individual of advanced age on the date the application was filed. He is currently 57 years old, defined as an individual of advanced age.

8. [Plaintiff] has at least a high school education (20 CFR [] 416.964).

9. Transferability of job skills is not an issue because [plaintiff] does not have past relevant work (20 CFR [] 416.968).

10. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR [] 416.969 and 416.969(a)).[3]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from January 14, 2019, the date the application was filed (20 CFR [] 416.920(g)).

(Tr. 42-53).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[3] Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of representative medium, unskilled occupations such as salvage laborer (150,000 jobs in the national economy), janitor (150,000 jobs in the national economy), and laundry worker (75,000 jobs in the national economy). (Tr. 52, 92).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

## D. Specific Errors

Plaintiff raises a single issue on appeal: the ALJ's residual functional capacity (RFC) is not supported by substantial evidence. Plaintiff contends the ALJ's decision is internally inconsistent on the amount of interaction plaintiff could have with supervisors given his mental health impairments. The ALJ's RFC limited plaintiff to "jobs involving brief and superficial interaction with the public[], and *occasional* interaction with coworkers and *supervisors*." (Tr. 45) (emphasis added). In evaluating the opinions of the state agency psychological consultants,

5

however, the ALJ found that plaintiff was limited to "jobs involving *brief and superficial interaction* with the public and ***supervisors***, and occasional interaction with coworkers. . . ." (Tr. 51) (emphasis added). Plaintiff argues that this inconsistency renders the ALJ's ultimate RFC determination unreliable. Plaintiff argues that the error is not harmless because the distinction impacted the VE's testimony, which the ALJ relied on at step five of the sequential evaluation process. In particular, the VE testified that the probationary periods for the suitable jobs identified required more than brief and superficial interaction with supervisors.

The Commissioner argues in response that the ALJ's later statements notwithstanding, the RCF determination itself (i.e., Tr. 45 at ¶ 5) is not internally inconsistent. Because the VE testified that a person with the social-interaction restrictions described in that RFC could perform the jobs of salvage laborer, janitor, and laundry worker, substantial evidence therefore supports the ALJ's non-disability finding. (*See* Tr. 97). The Commissioner also argues that the VE's testimony, in context, provides substantial evidence to support the conclusion that plaintiff could perform those jobs regardless of whether he could briefly and superficially or occasionally interact with supervisors.

In reply, plaintiff argues that the VE's testimony on the level of interaction with supervisors required for those jobs was unclear at best. As such, he argues that it is impossible to determine whether the Commissioner sustained her step-five burden to show that plaintiff could sustain work in the national economy.

1. <u>Relevant testimony</u>

The testimony at issue includes portions of the ALJ's initial hypothetical, plaintiff's counsel's cross-examination, and the ALJ's subsequent hypothetical:

> Q [by the ALJ] Okay. So, let's say no past relevant work, and I would ask you to please assume a person [plaintiff]'s age, education, work experience, and skillset who is able to perform work at all exertional levels; never climb ladders, ropes, or scaffolds; avoid all use of hazardous moving machinery; avoid all exposure to unprotected heights; and based on mental health symptoms, work would be limited to simple, routine, and repetitive tasks that can be learned on the job in 30 days or less; performed in a work environment free of fast-paced production requirements; involving only simple, work-related decisions; and with few, if any, workplace changes. Very superficial interaction with the public and also with supervisors, and occasional interaction with coworkers. Would there be any jobs in the national economy for such an individual?
>
> A Yes, there would be jobs.
> . . .
>
> Q [by the ALJ] Okay. So, why don't -- why don't we focus in on medium work?
>
> A Okay. At medium, this person could work -- let's see, as a as a salvage laborer, 929.687-022. There are about 150,000 salvage laborers in the country. As a -- as a janitor, 381.687-018. There are about 150,000 janitors in the country. And, let's see, as a -- as a laundry worker, 361.685-018. There are about 75,000 laundry workers in the country.
> . . .
>
> Q [by plaintiff's attorney] Okay. All right. And in -- I assume that even unskilled work requires, both during and after the probationary period, some level of interaction in terms of training, coaching, job direction, things and so forth so -- so the individuals can learn the tasks that make up the job. Would that be correct?
>
> A Yes. In unskilled work, usually, the job can be performed adequately after about 30 days.
>
> Q Okay.
>
> A So --

7

Q And --

A So, yes, there -- there can be some occasional -- and when I say occasional, I don't mean a third of the day -- an occasional contact with the supervisor, but generally, in unskilled work, that's not -- there's not a lot of supervision.

Q Okay. And -- and to teach somebody to do a job, even at the unskilled level, would I be correct in assuming that that type of interaction would require more than -- than just superficial-type of interaction or contact?

A I'm sorry --

Q [INAUDIBLE].

A -- are you talking about contact with coworkers or supervisors?

Q Well, the employer or supervisor, if he's gonna teach the individual the job.

A And your question --

Q [INAUDIBLE], you know, you have 40 days or less for a SVPl job, would I be correct that even at that level, it's gonna require more than superficial interaction to teach somebody how to do the job?

A After the 30 days?

Q Well, no, to teach them during the 30 days.

A Oh. It would -- yes, definitely would require more than superficial. But, you know, I -- I really can't say 30 days. I -- I'd say the first week usually. That's why SVPl and 2 are -- they're a short demonstration and including up to 30 days. Usually, it's a short demonstration, and then, there might be few questions here or there, but it doesn't really take much longer than that to learn the basics of the job.

Q Okay. So, to get past the probationary period then, if somebody couldn't have more than superficial, brief interaction, that would it -- would it be correct that would prevent then being able to get past that probationary period, even for an unskilled job?

A Yes. You're -- you're correct in that. Yes.
. . .

8

> Q [by the ALJ] All right. [VE], I'd like to change the first hypothetical I gave you to where the interaction with the public remains at brief, superficial interaction with the public, but if I were to -- if we were to change the hypothetical to where it would be occasional interaction with supervision and with coworkers, would that give prior testimony about those -- the three medium jobs being available, would they be available?
>
> A Yes, they would. There would be no change in my testimony.
>
> Q Okay. Because I don't know. The -- the first hypothetical I gave you, I limited interaction with supervision and with the general public to brief, superficial interaction, and I thought I heard you say that they wouldn't be able to get through the probation period then for the unskilled work, you know, jobs.
>
> A Well, I -- I must have misspoken, because it wouldn't -- it wouldn't change. Superficial could be done during the probationary period. Well, simply because there's -- there's very little training involved.

(Tr. 91-92, 94-98).

    2. ALJ's decision

The ALJ's decision makes three references to limitations in plaintiff's ability to interact with others. The first reference is in the ALJ's RFC determination: "[plaintiff] is . . . limited to jobs involving brief and superficial interaction with the public[], and occasional interaction with coworkers and supervisors." (Tr. 45, Finding of Fact #5). The second reference, not raised by plaintiff, occurs in the ALJ's assessment of the opinion of Dr. Marcia J. Adelman, plaintiff's psychiatrist. (Tr. 49). The ALJ found her opinion that plaintiff had moderate limitation in his abilities to respond appropriately to coworkers or peers, relate to the general public, and maintain socially appropriate behavior "persuasive." (*Id.*). As such, the ALJ wrote that this component of Dr. Adelman's opinion "ha[d] been addressed in the residual functional capacity, which limits him to . . . jobs involving brief and superficial interaction with the public *and supervisors*, and

9

occasional interaction with coworkers." (*Id.*) (emphasis added). The third reference occurs in the ALJ's assessment of the state agency psychological consultant's opinion, which found plaintiff had no limitation in his ability to interact with others. (Tr. 51). The ALJ found this opinion "not persuasive and not well-supported" and reiterated that mental restrictions were necessary, including a limitation to "jobs involving brief and superficial interaction with the public *and supervisors*, and occasional interaction with coworkers. . . ." (*Id.*) (emphasis added). In sum, the ALJ's RFC determination that plaintiff was limited to *occasional* interaction with supervisors was inconsistent with the limitation of *brief and superficial* interaction with supervisors the ALJ assessed in his analysis of the opinions of Dr. Adelman and the state agency psychological consultant.

    3. <u>Analysis</u>

The ALJ is charged with the final responsibility in determining a claimant's RFC. *See* 20 C.F.R. § 416.927(d)(2) (the final responsibility for deciding the RFC is "reserved to the Commissioner."). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 416.945(a)(3). *See also Moore v. Astrue*, No. 07-204, 2008 WL 2051019, at *5 (E.D. Ky. May 12, 2008) ("[T]he ALJ is responsible for assessing a claimant's [RFC] by examining all the evidence in the record.") (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)); *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006)).

Plaintiff refers to Social Security Ruling (SSR) 96-8p,[4] which concerns the agency's assessment of RFC. *See* SSR 96-8p, 1996 WL 374184. In particular, plaintiff references the following: "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7. What plaintiff raises in this appeal, however, is not inconsistency "in the evidence[.]" *Id.* Rather, the inconsistency is in the ALJ's intended determination based on that evidence—in particular, plaintiff's level of limitation in interacting with supervisors. The question before the Court is whether that inconsistency amounts to reversible error in this case.

In his opening brief, plaintiff argues that this inconsistency means that "the ALJ's residual functional capacity cannot be deemed to be supported by substantial evidence." (Doc. 8 at PAGEID 674). The inconsistency first arose in the context of Dr. Adelman's opinion, which included that plaintiff was moderately limited in his ability to interact with others. (*See* Tr. 49, referring to Tr. 494). The ALJ found this element of Dr. Adelman's opinion persuasive and concluded that this moderate limitation was "addressed in the [RFC]" by limiting plaintiff to "jobs involving brief and superficial interaction with . . . supervisors." (Tr. 49). The ALJ repeated this limitation when he assessed the opinion of the state agency psychological consultant. (Tr. 51 ("This opinion is not persuasive. . . . [I]t becomes reasonable . . . to allow for mental restrictions. Those restrictions include . . . jobs involving *brief and superficial*

---

[4] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n. l (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)). The Sixth Circuit has refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations but has assumed that they are. *Id.* (citing *Wilson*, 378 F.3d at 549).

*interaction* with the public *and supervisors*. . . .") (emphasis added)). Nowhere in the body of the ALJ's decision and in the discussion of the evidence does the ALJ make a finding that based on the evidence plaintiff is limited to occasional interaction with supervisors. Accordingly, the ALJ's RFC determination is not supported by substantial evidence.

The question, therefore, is whether this is harmless error given the VE's testimony. Plaintiff argues that reversal and remand is warranted because "[i]t is impossible to be certain that [plaintiff] could perform the jobs relied on by the ALJ after the inconsistent, back and forth testimony provided by the vocational witness." (Doc. 10 at PAGEID 690).

At step five of the sequential evaluation process, the burden shifted to the Commissioner to demonstrate that plaintiff could perform work that is available in the national economy. *Rabbers*, 582 F.3d at 652. To meet this burden, "the Commissioner must make a finding 'supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Varley v. Sec'y of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" *Varley*, 820 F.3d at 779 (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).

The Court concludes that substantial evidence does not support the ALJ's conclusion at step five of the sequential evaluation. When pressed by plaintiff's counsel on the need for more

than brief and superficial interaction with supervisors during the probationary periods of the jobs identified, the VE testified:

> A Oh. It would -- yes, **definitely would require more than superficial.** But, you know, I -- I really can't say 30 days. I -- I'd say the first week usually. That's why SVP l and 2 are -- they're a short demonstration and including up to 30 days. Usually, it's a short demonstration, and then, there might be few questions here or there, but it doesn't really take much longer than that to learn the basics of the job.
>
> Q Okay. So, to get past the probationary period then, **if somebody couldn't have more than superficial, brief interaction**, that would it -- would it be **correct that would prevent then being able to get past that probationary period, even for an unskilled job**?
>
> A **Yes.** You're -- **you're correct in that**. Yes.

(Tr. 95-96) (emphasis added). The VE's testimony suggests plaintiff would be required to engage in *more than* brief and superficial interactions with a supervisor during the probationary period, but those interactions would likely not last a full 30 days. If plaintiff was limited to only brief and superficial interactions, it would appear that this limitation would, according to the VE's testimony, be work preclusive.

> When subsequently questioned by the ALJ, however, the VE appears to backtrack:
>
> Q Okay. Because I don't know. The -- the first hypothetical I gave you, *I limited interaction with supervision and with the general public to brief, superficial interaction, and I thought I heard you say that they wouldn't be able to get through the probation period* then for the unskilled work, you know, jobs.
>
> A Well, I -- I must have misspoken, because it wouldn't -- it wouldn't change. *Superficial could be done during the probationary period. Well, simply because there's -- there's very little training involved.*

(Tr. 97-98) (emphasis added).

13

The VE's testimony in response to the ALJ's questioning appears to directly contradict the VE's response to plaintiff's attorney's questioning. On the one hand, the VE testifies that an individual limited to superficial and brief interactions with supervisors would be prevented from getting past the probationary period. (Tr. 95-96). On the other hand, the VE also testified that "[s]uperficial could be done during the probationary period." (Tr. 97-98). While the ALJ identified and questioned the VE about this inconsistency, the VE's responsive testimony does not explain it other than to posit that she "must have misspoken. . . ." (Tr. 97). Absent any substantive explanation or clarification, the Court is unable to discern from the instant record whether plaintiff is able to perform the jobs relied on by the ALJ at step five. The Court is therefore unable to conclude that the ALJ met his step-five burden. Plaintiff's assignment of error should be sustained, and this matter should be reversed and remanded for further proceedings.

**IT IS THEREFORE RECOMMENDED THAT** plaintiff's Statement of Errors (Doc. 8) be **SUSTAINED**, and the decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 5/18/2022

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THOMAS L. P.,  Case No. 1:21-cv-736
    Plaintiff,  Black, J
                                      Litkovitz, M.J.
   vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).